AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

**FILED**
January 20, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____aq_____
DEPUTY

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Daniel Vargas Rodriguez | ) Case No. |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

Case No. **EP:26-MJ-278-LE**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __01/16/2026__ in the county of __El Paso__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §952 | knowlingly and intentionally import into the United States from the Republic of Mexico a quantity of cocaine to wit approximately 5.82 kilograms (gross weight) of cocaine, a Schedule II Controlled Substance. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

Complaint sworn to telephonically on __January 20, 2026__ at __01:12 PM__ and signed electronically. **FED.R.CRIM.P. 4.1(b)(2)(A)**

*Complainant's signature*

Jacqueline Walker HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __01/20/2026__

*Judge's signature*

City and state: __El Paso, Texas__     Laura Enriquez, U.S. Magistrate Judge
*Printed name and title*

Affidavit

On January 16, 2026, at approximately 11:49 a.m., Daniel VARGAS Rodriguez, a Mexican citizen, entered the United States from the Republic of Mexico through the Paso del Norte Port of Entry (POE) in El Paso, Texas, which is within the Western District of Texas.

A Customs and Border Protection Officer (CBPO) was conducting pre-primary roving operations when they noticed VARGAS, the sole driver of a Ford Explorer, avoiding eye contact with them as they passed his vehicle. The CBPO passed by VARGAS' vehicle a second time and noticed VARGAS began to fidget in his seat attempting to reach for something in the back seat. The CBPO asked VARGAS to roll down his window to which VARGAS seemed to be confused about what the CBPO was asking him to do. The CBPO asked VARGAS where he was going. VARGAS replied he was going shopping. The CBPO asked VARGAS if the vehicle belonged to him. VARGAS replied it was his and he had bought it a couple of months ago. The CBPO asked VARGAS if anyone asked him to bring anything for anyone from Mexico into the United States or from the U.S. to Mexico. VARGAS stated no. The CBPO asked VARGAS if he was responsible for everything in the vehicle. VARGAS stated yes. The CBPO then notified the primary lane CBPO to refer the vehicle to secondary for further inspection.

VARGAS presented himself for inspection on the vehicle primary lane to a CBPO, presenting his Border Crossing Card. The CBPO asked VARGAS where he was going. VARGAS stated he was going shopping. The CBPO noticed VARGAS appeared to be nervous by displaying wide eyes and hesitating to answer his question. VARGAS began to unbuckle his seatbelt as if he was going to step out of the vehicle, but the CBPO told VARGAS he did not need to get out of the vehicle to which the CBPO noticed VARGAS seemed relieved. The CBPO began to inspect the vehicle's trunk area, the CBPO noticed VARGAS would not stop looking at what he was doing. The CBPO asked VARGAS if any repairs or modifications were done to the vehicle. VARGAS stated no. The CBPO received a negative declaration from VARGAS. The CBPO asked VARGAS if he was responsible for everything in the vehicle. VARGAS responded yes. A CBPO then escorted the vehicle to the secondary inspection area.

In secondary, while inspecting the vehicle, CBPOs noticed the carpet was glued down in the third row of the vehicle. Upon pulling back the carpet, a trap door was discovered. The CBPO then requested a Canine Enforcement Officer (CEO) and their assigned Concealed Human Narcotic Detector Dog (CHNDD) to conduct a search of the vehicle. The CHNDD alerted to the trained odor of narcotics on the floor area between the second and third row inside the vehicle. The vehicle was then driven through the Z-portal X-ray machine where rectangular shaped anomalies were seen in the third-row area of the vehicle.

The vehicle was taken to a secure area where a non-factory compartment was discovered. In the compartment, a total of five plastic wrapped bundles were removed for an

aggregate weight of 5.82 kilograms. Field test of the contraband using the GEMINI yielded positive results for the properties of cocaine.

U.S. Homeland Security Investigations (HSI) arrived at the POE. VARGAS read his Miranda Rights in the Spanish language. VARGAS agreed to speak without the presence of an attorney. The interview was recorded with an audio and video recording device.

VARGAS stated someone gave him the vehicle to cross and took him to put the vehicle in his name three months ago. VARGAS stated it was his second time crossing what they told him was to be money, but he had an idea it was drugs. VARGAS stated he was going to be paid $1,500 minimum to $3,000 maximum depending on how much he was taking. VARGAS stated he believed they used the vehicle a long time ago because they were supposed to take back the vehicle to build the compartment, but they never asked for the vehicle back; so, he believed it already had the compartment but did not know where it was.

Because this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.